Opinion of the Court.
THIS was a bill in chancery, filed by Philips and Thompson, to be released from a judgment which Overstreet had obtained against them, upon their note for four hundred dollars. The note, they allege, was given for the price of a negro woman and her child, sold by Overstreet to Philips. They charge that the negro woman, at the time of the sale, was diseased, and that Overstreet knew it, and fraudulently concealed it; that immediately after the purchase of the negroes, Philips took them to Natchez, for market, where he sold them to one Job Ruth, who discovered the woman to be afflicted with the disease commonly called the King’s Evil, and returned her and her child to Philips; and that he had afterwards to sell them at a sacrifice of about two hundred dollars, apprising the purchaser of the unsoundness of the woman. That upon his return from Natchez, Philips informed Overstreet of these circumstances, who thereupon agreed, if Philips would pay three hundred dollars, and procure the certificates or affidavits of Job Ruth and Dr. Leip of Natchez, that the negro woman was diseased, that the note for the four hundred dollars should be given up; that Philips had paid the three hundred dollars, and procured the affidavits, which are exhibited as part of the bill; but they allege that Overstreet, in violation of his agreement, refused to give up the note, on the the affidavits being presented to him, and had brought suit and recovered judgment thereon ; and they prayed and obtained an injunction.
Overstreet, in his answer, admits the sale of the negro woman and her child, and that the note for four hundred dollars was given for the price of them. He alleges, when he proposed to sell, he informed Philips that the woman sometimes had a cough, and that a *122 southern climate would probably relieve her; but he denies that he knew, or even suspected that she was afflicted with the disease called the King’s Evil. He admits that Philips had told him that he had lost in the sale of the negroes, on account of the disease of the woman, and that he agreed to give up the note to him, if he would pay three hundred dollars, and establish the fact that the woman was diseased when he sold her ; and he admits, too, that the three hundred dollars had been paid, and the certificates or affidavits referred to in the bill, had been shown to him; but he does not admit that the fact of the unsoundness of the woman was to be established by the certificates or affidavits of those men ; on the contrary, he alleges that he expected that it would be established by others, who lived in Louisville, where he had long been possessed of the woman.
Notice that a deposition will be taken at a particular tavern in a city named in the notice, is good, without mentioning the christian name of the tavern-keeper, unless it is shown, that there were in the same city, two tavern-keepers of the same surname.
On the hearing of the cause, Overstreet objected to the reading of a deposition taken by Philips and Thompson, on the ground of the insufficiency of the notice, and the want of authentication; but the court overruled the objection, and permitted the deposition to be read, and pronounced a decree perpetuating the injunction; from which Overstreet has appealed to this court.
1. The objection taken to reading the deposition, was, no doubt, properly overruled. The only plausible ground of objection to the sufficiency of the notice, is, that it was given to take the deposition at the tavern of — Parker, in the city of Natchez, without stating his christian name. But certainly the want of the christian name of the person at whose tavern the deposition was to be taken, cannot vitiate the notice, unless it had been shown that there was some other person of the same surname in the city; and that was not done. And with respect to the authentication of the deposition, we can perceive not the slightest pretext for an objection.
2. The propriety of the decree, on its merits, is questioned on several grounds. It is contended, in the first place, that a court of equity has no jurisdiction of the case. This, according to the repeated decisions of this court, would be a well founded objection, if the question depended exclusively upon the alleged fraud in the sale of the slaves; for, in such case, *123 the damages being unliquidated, and arising from tort, a jury would be alone competent to ascertain them, and an action at law would be the only proper remedy. But the appellees in this case do not seek relief solely on the ground of fraud in the original contract of sale, but also upon the ground of the subsequent agreement, whereby the appellant undertook to deliver up the note for the price of the slaves, upon the appellees’ paying to him less by one hundred dollars than the amount of the note, and complying with the other terms of the agreement. This agreement is clearly proved. It is not, indeed, in its essential features, denied by the appellant ; and the appellees, we think, have shown a substantial compliance with it on their part. The parties having, therefore, thus liquidated and ascertained the amount to which the appellees were entitled, we can perceive no solid objection to the interposition of a court of equity, to prevent the appellant from coercing the payment of the whole amount of the note, in violation of the agreement on his part.
Where the injury complained of is fraud, in knowingly selling an unsound slave for a sound one, and the relief sought is merely an appropriate reduction of price, a court of law is the proper tribunal ; because the action originates in tort, and the amount of damages in such actions, can be best ascertained by a jury.
A prejudice to the party to whom a promise is made, as well as a benefit to the party making it, is a sufficient consideration to render the promise obligatory.
3. But it is, in the second place, contended, that the agreement to deduct a part from the amount of the note, and to, give it up, was without consideration, and not obligatory upon the appellant. It is certainly true, that the agreement, if made without consideration, would not be obligatory ; but we cannot admit that there was no consideration for the agreement on the part of the appellant. Independent of any legal or moral obligation, which he might be supposed to be under, to make a deduction from the price of the slaves, on account of the unsoundness of the woman, the undertaking on the part of the appellees to procure affidavits to establish the unsoundness, was a sufficient, consideration to support the agreement to make such deduction ; for the trouble in procuring the affidavits, was a prejudice to them, and it is well settled, that a, prejudice to the party to whom a promise is made, as well as a benefit to the party making a promise, is a sufficient consideration to render the promise obligatory.
The decree must be affirmed with costs.